UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CHIRIBOGA, Individually and as | ) | |
| Administrator of the Estate of | ) | |
| JOYCE CHIRIBOGA, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 08 C 7293 |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, NORTHEAST | ) | |
| ILLINOIS REGIONAL COMMUTER | ) | |
| RAILROAD CORPORATION, and SOO | ) | |
| LINE RAILROAD COMPANY, d/b/a | ) | |
| CANADIAN PACIFIC RAILWAY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motions of Defendants National

Railroad Passenger Corporation ("Amtrak"), Northeast Illinois Regional Commuter

Railroad Corporation ("Metra"), and Soo Line Railroad Company ("Canadian Pacific")

to dismiss the claims of Defendant John Chiriboga ("Chiriboga"), administrator of the

estate of Joyce Chiriboga ("Joyce"), for failure to state a claim. For the reasons set forth

below, Canadian Pacific and Metra's motions are granted; Amtrak's motion is denied.

## BACKGROUND

Metra is the owner and operator of a railroad right-of-way referred to as the Milwaukee District Line. The right-of-way runs through northeastern Illinois and contains two mainline railroad tracks at grade level as well as stations adjacent to the tracks. One station on the line is located in a Chicago neighborhood known as Edgebrook, at the intersection of Devon, Lehigh, and Caldwell Avenues. The station at Edgebrook has platforms on either side of the tracks from which passengers board trains. A pedestrian crosswalk traverses the tracks between the two platforms to permit passengers to walk from one platform to the other.

Canadian Pacific controls rail traffic on the Milwaukee District Line for Metra and Amtrak. In that process, a system is employed that uses block signal indications to authorize train movement. The block signals allow Canadian Pacific to track the location of trains being monitored at any given time. According to the complaint, information about what trains are using what blocks is not communicated to Metra headquarters, so communication to passengers and invitees at Metra's stations is not afforded.

On Saturdays, Metra operates a northbound train out of Chicago that makes a scheduled stop at Edgebrook station at 7 pm. Amtrak operates a southbound train from Milwaukee to Chicago. Though the Amtrak train uses the tracks that run through the

Edgebrook station, it does not stop at Edgebrook.  When the train is on schedule, it passes through Edgebrook at approximately 6:53 pm.  On November 8, 2008, however, the Amtrak train was about six minutes behind schedule, bringing it into the station at almost the same time as the scheduled Metra train.  According to the complaint, the Amtrak train approached and entered the station at a speed of approximately 79 miles per hour.  The Amtrak train was equipped with a horn and a bell; the complaint alleges that the bell sounded as the train approached but that the horn did not.

That night, Joyce had traveled to the station with her sister, Diane Moss, who was planning to board the 7 pm train.  The two women entered the station on the opposite side of the tracks from where Moss would need to board the northbound train.  In order to be on the correct platform, they needed to cross the tracks via the pedestrian crosswalk.  As Joyce was crossing the tracks, the Amtrak train struck and killed her.

On December 22, Chiriboga filed the instant suit in our court.[1]  Count I of the four-count complaint asserts a claim for wrongful death against Metra, alleging that it engaged in willful and wanton misconduct.  Count II is a negligence claim against Metra.  Count III asserts that Amtrak is liable for negligence.  Count IV asserts a

---

[1]Paragraph 2 of the second amended complaint states that the case was removed to federal court by Amtrak on October 2, 2008, but that entry is clearly in error as the incident at issue did not take place until the following month.  The date of filing recited herein is that reflected on the court's docket.

negligence claim against Canadian Pacific. Each defendant now moves to dismiss the claim or claims against it pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To state a claim on which relief can be granted, a plaintiff must satisfy two conditions: first, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; and second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007); *see also Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1950 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). The court will apply the notice-pleading standard on a case-by-case basis to evaluate whether recovery is plausible. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

With these principles in mind, we turn to Defendants' motions.

## DISCUSSION

### A. Negligence Claims

Three of the four challenged claims sound in negligence. In Illinois, a negligence claim contains four elements: the existence of a duty, a breach of that duty, injury to the plaintiff, and proximate causation of the injury by the defendant's breach. *See Gouge v. Central Illinois Pub. Serv.*, 582 N.E.2d 108, 111 (Ill. 1991). Duties can arise from common law, statute, ordinance, or regulation. *See, e.g., Bartelli v. O'Brien*, 718 N.E.2d 344, 355 (Ill. App. Ct. 1999). In addition, a duty exists when a defendant stands in relationship to a plaintiff such that the law obligates the defendant to exercise reasonable care for the plaintiff's benefit. *Ward v. KMart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990).

### 1. Amtrak

In the case of Amtrak, the duty owed to Chiriboga arises from common law. "[I]t is well settled that a railroad has a common law duty with respect to crossings to provide adequate warning to travelers that a train is approaching." *Magna Bank of McLean Cty. v. Ogilvie*, 601 N.E.2d 1091, 1095 (Ill. App. Ct. 1992). Amtrak insists that it was absolved from its duty in this case because its train was an open and obvious danger. This argument is flawed for two reasons. First, Illinois does not recognize an open and obvious danger as automatically cancelling a duty otherwise owed. *Ward*, 554

N.E.2d at 229.  As the Illinois Supreme Court recognized in *Ward*, "the 'obviousness' of a condition or the fact that the injured party may have been in some sense 'aware' of it may not always serve as adequate warning of the condition and the consequences of encountering it."  *Id.* at 230.  Second, in this case, the train is alleged to have been traveling fast enough to cover the length of a football field in less than three seconds. Even if its presence was open to a reasonable person, the danger it presented may not have been obvious in time for a reasonable person to take action to protect his or her own safety.  Rather, the situation is more analogous to a danger that is "concealed or latent, rather than open and obvious" and in such situations "the likelihood of injury increases because people will not be as readily aware of such latent danger." *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 836 (Ill. 1996).  For purposes of Rule 12(b)(6), Chiriboga has properly pled a duty on Amtrak's part in this situation, as well as the remaining elements of a negligence claim.  Consequently, the motion to dismiss Count III is denied.

## 2. Metra

Metra is a "local public entity" as that term is defined in 745 ILCS 10/1-206. *Smith v. Northeast Ill. Reg'l Commuter R. R. Corp.*, 569 N.E.2d 41, 43 (Ill. App. Ct. 1991).  As such, the scope of its duty to Joyce is defined by the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity

Act"). 745 ILCS 10/1-101 *et seq.* The statute provides that local public entities must "exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3-102(a). The allegations of Chiriboga's complaint distill to assertions that Metra did not maintain the Edgebrook station in a reasonably safe condition and therefore breached this duty in four ways: failing to install visual devices at the crosswalk; failing to install a gate at the crosswalk; failing to announce the approach of the Amtrak train over the existing loudspeaker system; and failing to install audible devices in addition to the loudspeaker system that would alert passengers and invitees of approaching trains.

Metra contends that it owed no duty to Joyce and that even if it did owe a duty, it is immune from liability for injuries caused by breaches of its duty. The first argument is a nonstarter. Section 10/3-102(a) imposes a duty of reasonable care on Metra. For the same reasons stated in our discussion of Amtrak's motion, the danger presented was not so obvious that the duty would be negated.

With regard to the second argument, 745 ILCS 10/3-104 provides that a local public entity is not liable "for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs...or any other traffic regulating or warning

sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." The Illinois Supreme Court has construed this section broadly, concluding that it presents absolute immunity to local public entities from liability arising from the failures it describes. *West v. Kirkham*, 588 N.E.2d 1104, 1107, 1108 (Ill. 1992).

Chiriboga insists that 3-104 does not apply to this situation, citing the Illinois Vehicle Code, which defines traffic as persons, animals, or vehicles using a highway for purposes of travel. 625 ILCS 5/1-207. "Highway" is defined within the statute as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel...." 625 ILCS 5/1-126. According to Chiriboga, the crosswalk at Edgebrook is not a highway, so persons traveling on it are not traffic, and devices to control or restrain their movements would not fall within the scope of 3-104 immunity. While there is some facial appeal to this argument, the Vehicle Code does not specifically address a situation pertaining to a railroad crossing, and at least one Illinois court has held a municipality to be immune under 3-104 from liability for failure to provide a stop sign, a gate, and flashers at a railroad crossing. *Robinson v. Atchison, Topeka & Santa Fe Ry. Co.*, 629 N.E.2d 209, 212 (Ill. App. Ct. 1994). Given that *Robinson* was examining an occurrence that does not differ in material ways from the one presented here, it provides superior guidance on the law of the state of Illinois than a brand-new statutory

interpretation. The deficiencies identified within Chiriboga's complaint pertain to visual devices at the crosswalk; announcements over the existing loudspeaker system; audible devices in addition to the loudspeaker system; and a gate at the crosswalk. The first three are traffic warning signs or devices and the fourth a traffic barrier, all of which are included in the scope of 3-104. Chiriboga also argues that the lack of the items identified above constitutes part of the "plan or design" of the station. If he is correct, that would bring the case into the ambit of 745 ILCS 10/3-103, which does not provide absolute immunity for local public entities. However, the Court in *West* considered and rejected a like argument. 588 N.E.2d at 1110. Accordingly, we conclude that 3-104 applies to this situation and that Metra is immune from liability for failure to provide these devices under *West*. In light of this conclusion, it is not necessary to examine Metra's alternative assertion of immunity under 745 ILCS 10/2-201. Dismissal of Count II under Fed. R. Civ. P. 12(b)(6) is appropriate.

## 3. Canadian Pacific

With regard to Canadian Pacific, Chiriboga asserts that it owed a duty to notify Metra of occasions when Amtrak trains were approaching Edgebrook station and would be passing through at high speeds at the same time that Metra trains were scheduled to stop. He has identified no common law, statute, ordinance, or regulation as imposing this duty. Accordingly, we must examine the relationship between it and Joyce to

determine whether a duty can be imposed by law on Canadian Pacific for her benefit. *Ward*, 554 N.E.2d at 226. Determining whether a defendant owes a plaintiff a duty in a particular case can be "very involved, complex, and indeed nebulous." *Mieher v. Brown*, 301 N.E.2d 307, 310 (Ill. 1973). However, certain factors have been identified by Illinois courts as being relevant to a determination of whether a duty exists. *Ward*, 554 N.E.2d at 226. The first is whether the plaintiff's injury was reasonably foreseeable. *Id.* Next, a court looks beyond foreseeability to examine how likely the injury was to occur. *Id.* Considerations specific to the defendant are also relevant, such as the degree of burden that would be placed on the defendant to guard against the injury and the consequences of requiring the defendant to take measures that would have avoided the injury. *Id.* at 226-27. Another consideration is the possible serious nature of the injury. *Id.* at 232.

With regard to foreseeability, we have no information about what Canadian Pacific knew or should have known about the configuration of the Edgebrook station and its crosswalk. It is certainly foreseeable that pedestrians would be at the station around the time that a Metra train was scheduled to stop there, but that does not necessarily translate into a foreseeable, let alone a likely, risk of injury. On the nature of injuries that could result, injuries resulting from a train colliding with a pedestrian, particularly at high speed, are highly likely to be serious if not fatal.

However, if the duty Chiriboga asserts were to be imposed, the burden on and consequences to Canadian Pacific would be significant. There is no allegation that Canadian Pacific, as a dispatcher, controlled the movement of the trains on the Milwaukee District Line. Rather, it is portrayed only as having information about the real-time location of trains and their proximity to stations and other trains. Although the complaint sets out the asserted duty in very narrow terms, realistically Canadian Pacific's duty to act would not in reality be so limited. Rather, it would most likely consist of an obligation to transmit information it has regarding train positioning to Metra regarding any instance where a train is approaching a station close to the same time as another. There is no indication that a system is in place that permits Canadian Pacific to communicate this type of information to Metra's headquarters on a real-time basis. If no such system exists, to design and install one would surely be a substantial undertaking. In addition, the time and attention that would be required to identify situations posing danger to pedestrians in the stations would detract from Canadian Pacific's main responsibility of monitoring train traffic and keeping trains from colliding with each other. Balancing the burden on Canadian Pacific in its capacity as remote dispatcher with the considerations specific to Joyce, we conclude that they did not stand in a relationship that imposed a duty on Canadian Pacific to act for Joyce's benefit in communicating information on the real-time position of trains to Metra to

permit it to make a cautionary loudspeaker announcement. Without a legally cognizable duty, the negligence claim against Canadian Pacific cannot stand and 12(b)(6) dismissal of Count IV is appropriate.

## B. Willful and Wanton Conduct Claim

The remaining count, Count I, asserts a cause of action against Metra that is premised on willful and wanton conduct. This type of conduct differs from that needed to establish negligence in that it involves an intentional act or a reckless disregard for others' safety. *Ziarko v. Soo Line R. Co.*, 641 N.E.2d 402, 405 (Ill. 1994). Failing to employ ordinary care to prevent an injury from a known danger or to discover the danger will qualify as reckless disregard. *Id.* Here, Chiriboga contends that there were fatalities and innumerable close calls for many years resulting from Amtrak trains arriving at Metra stations contemporaneous to the arrival of a Metra train. Second Amended Compl., ¶ 24. However, the Supreme Court considered whether the immunity conferred upon a local public entity by 745 ILCS 10/3-104 extends to situations where the local public entity had notice that an unsafe condition existed on its property because of the lack of traffic control devices. *West*, 588 N.E.2d at 1107. After comparing 3-104 to other sections of the Tort Immunity Act, the Court concluded that it extended immunity for all liability arising from the failure to provide such devices. *See id.* The allegations advanced in Count I fall squarely within the bounds of the

position examined and rejected in *West*. Consequently, *West* dictates that 3-104 immunity bars Plaintiff from recovery against Metra for the claim of willful and wanton conduct, and Count I must be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Based on the foregoing analysis, the motions to dismiss of Canadian Pacific and Metra are granted. Amtrak's motion is denied.

_____
Charles P. Kocoras
United States District Judge

Dated:     September 3, 2009