UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN CHIRIBOGA, individually,         )
and as Administrator of the Estate of   )
Joyce Chiriboga, Deceased,            )
                                       )
                    Plaintiff,         )
                                       )
        vs.                            )         08 C 7293
                                       )
NATIONAL RAILROAD PASSENGER            )
CORPORATION, et al.,                   )
                                       )
                    Defendants.        )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the court on the motion of Defendant National Railroad

Passenger Corporation ("Amtrak") to bar the Plaintiff John Chiriboga ("Chiriboga")

from using the expert testimony of John Senders, Kenric Van Wyk, and Richard Beall.

For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

This case arises out of an accident that occurred on November 8, 2008, at the

Edgebrook railway station in Chicago. In short, that night, Diane Moss ("Diane") and

her sister, Joyce Chiriboga ("Joyce"), entered the Edgebrook station on the opposite

side of the tracks from where Diane was supposed to board a northbound train. To reach

the correct platform, the sisters needed to cross the tracks via the pedestrian crosswalk.

Diane decided to cross the tracks and Joyce followed her. As Joyce and Diane were crossing the tracks, a southbound Amtrak train struck and killed Joyce. Chiriboga, individually and as administrator of the estate of Joyce, filed a complaint against Amtrak asserting a wrongful death claim under 740 Ill. Comp. Stat. 180/0.01. Following the completion of all discovery, including expert discovery, Amtrak filed a motion for summary judgment. In opposition to Amtrak's motion for summary judgment, Chiriboga offers the expert testimony of John Senders ("Senders"), Kenric Van Wyk ("Van Wyk"), and Richard Beall ("Beall"). Amtrak now moves to exclude the expert opinions.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standard of review established in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005). To be admissible, expert testimony must be offered by a person qualified as an expert by their knowledge, skill, experience, training, or education and assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. The testimony must be based on facts and data that reliably relate to the facts of the case and that are proven by a valid theory or technique. *Daubert,* 509 U.S. at 593. The admission or exclusion of expert testimony is a matter left to the discretion of the trial judge.

*Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir. 1990). Whether a particular witness is qualified as an expert is determined by comparison of the area in which the witness has superior skill, knowledge, education, or experience with the subject matter of the witness' proposed testimony. *Id.*

## DISCUSSION

### I.    Motion to Bar Senders' Expert Testimony

Chiriboga proposes Senders as an expert in human vision and human factors. Senders has proffered four opinions that are relevant to the instant motion and summarized as follows:[1]

(1)    Chiriboga's Statement of Additional Fact 33 (Opinion 1): It is possible that at the time of the accident, Joyce did not check if any southbound train was coming from her left-hand side, because she was either looking down at the unfamiliar crosswalk or at Diane who was leading the way across the tracks;

(2)    Chiriboga's Statement of Additional Facts 34 and 35 (Opinion 2): It is reasonable to expect that in deciding to follow Diane across the tracks, Joyce relied on Diane's decision that it was safe to cross and was probably looking to the right when Diane was also looking to the right for the northbound train;

(3)    Chiriboga's Statement of Additional Fact 36 (Opinion 3): Even if Joyce looked to the left and saw the train's headlights, she still would not have recognized them as a moving source of light because a brief glance at an object that is 300 feet away does not suffice to detect motion; and

---

[1] A close reading of Amtrak's motion reveals that Plaintiff's Statement of Additional Facts 32, 37, and 38 are not disputed by Amtrak. Consequently, we will confine our inquiry to Plaintiff's Statement of Additional Facts 33 to 36 and 39.

(4)  <u>Chiriboga's Statement of Additional Fact 39 (Opinion 4):</u> Joyce was standing in the middle of the inbound track when she became aware of the train's presence, three seconds before the impact.

Chiriboga has retained Senders to reconstruct the November 8, 2008 accident and to provide an expert opinion on whether Joyce could have seen the lights of the locomotive before she started walking onto the crosswalk. Having reviewed Senders' report and deposition, this Court will bar Senders' testimony in its entirety for the following reasons: (1) Senders does not qualify as an expert; (2) his opinions are not sufficiently based on the facts of the case, nor do they rely on scientific principles or methods; (3) his opinions do not assist the trier of fact; and (4) Chiriboga's reliance on Senders' opinions 3 and 4 are violative of federal and local rules of civil procedure.

## A.  Federal Rule of Evidence 702

First, the Court is not persuaded that Senders has the expertise that would allow him to testify about the November 8, 2008 events. A witness qualifies as an expert because of his knowledge, skill, or experience. Fed. R. Evid. 702. Also, an expert's opinion must have a "reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. Although Senders' curriculum vitae reveals that he is highly qualified in psychology and human behavior, his discipline does not pertain to human behavior and vision at crossing intersections. *See* Senders Dep. 38. During his career, Senders has never conducted any research on human behavior at roadway intersections,

railroad crossing intersections, or on the ability of pedestrians to see locomotive lights in nighttime conditions. *Id*. at 38. Senders has never been a member of a committee designed to assess or study human behavior at highway or railroad intersections, or a peer reviewer of studies relating to human behavior at railroad or roadway intersections. *Id*. at 39-40. Even though Senders published a "short note on the interaction between traffic lights at intersections," this exposure is irrelevant and dated - "it might have been 30 or 40 years ago." *Id*. at 41. Moreover, Senders does not show how his general experience and knowledge in psychology and human behavior is transferrable to human behavior and vision at highway or railroad crossing intersections. Because there must be some degree of correlation between the expert's superior knowledge and the subject matter of the offered opinions, this Court concludes that Senders does not have sufficient qualifications for his opinions.

Furthermore, even were Senders an incontrovertible expert in human behavior and vision at railroad intersections, his opinions are not sufficiently grounded in the facts of the case. In assessing the admissibility of expert testimony, it is "critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). Senders' opinions 1, 2, and 3 do not meet this basic test. Senders wishes to opine that on November 8, 2008, Joyce might have been looking

at the ground while crossing the tracks, might have been looking at her sister, might have looked to her right because of the Devon Avenue warning bells, or might have looked to her left where she might have detected the approach of a train or might not have understood it was a train. For example, Senders states that:

> "[Joyce] may have looked in either direction along the tracks. Or she may have not looked to either side since she was following her sister.
>
> If she had looked to the left she might have seen the lights of the approaching locomotive. If she had looked to the right she would not have seen anything on the tracks. We have no way of knowing whether she looked to either side."
>
> Senders report at 2.

A review of the record discloses that Senders does no more than provide a list of possibilities that are unsupported by any reliable facts in the record. When Senders was asked whether it was likely or not that Joyce would have looked at the locomotive and for how long, Senders answered: "I cannot say how long she would look." *Id*. at 135. When Senders was asked whether the record contained any information as to the direction of Joyce's look, he replied "I don't think I found any evidence whatsoever other than the fact that she followed her sister onto the tracks." *Id*. at 53-54. There is no sufficient factual record to determine what actions Joyce took and in what directions she looked. Absent some actual foundation, to suggest what Joyce might have done is

speculation on Senders's part. Accordingly, Senders cannot provide the jury with reliable expert opinion as to what did or did not occur.

Additionally, there is no indication that Senders applied any specialized knowledge or skill to the task he was asked to perform. Even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless [they] are based upon some recognized scientific method." *Clark v. Takata Corp.*, 192 F.3d 750, 750 n.5 (7th Cir. 1999). "An expert's report that does nothing to substantiate [his] opinion is worthless, and therefore inadmissible." *Minasian v. Standard Chartered Bank*, 109 F.3d 1212, 1216 (7th Cir. 1996). Here, Senders offers no meaningful statistics, studies, or comparisons to substantiate his opinions about Joyce's direction of look or detection of light and motion. Nor does he analyze any reports of similar accidents that occurred in that specific stretch or in analogous contexts. Because of a patent lack of actual evidence and scientific analysis, Senders is unable to adequately reconstruct the accident and reach a conclusion as to the probable cause of the accident.

This lack of scientific analysis leads to an additional shortcoming. Senders' opinions are not helpful to jury. To be admissible, expert testimony must assist the trier of fact to understand or determine a fact in issue. *Daubert,* 509 U.S. at 592. Senders' findings regarding Joyce's direction of look or actions while trailing Diane are nothing more than commonsense observations that fall within the scope of a juror's ordinary

knowledge. Here, Senders merely provides a list of possible actions undertaken by Joyce while she was attempting to cross the tracks. A jury could infer, without the assistance of an expert, whether Joyce was influenced by her sister's decisions, or whether she looked in all possible directions. For all the abovementioned reasons, opinions 1, 2, and 3 are not admissible under Rule 702.

For much the same reasons, the Court finds Senders' opinion 4 to be inadmissible. In his attempt to reconstruct the accident, Senders does not rely on actual evidence supplied by the record. Although Senders uses the actual geography and measurements of the crossing, he does not indicate whether he relied on the train's actual speed, the actual positions of the actors at the crossing, or their actual walking speeds. Because of this lack of actual evidence, Senders provides a "range of possible times" and an array of arithmetic calculations based on alternative walking speeds. Senders is attempting to estimate Joyce's *actual* walking speed but does not rely on hard data because he "do[es] not know any of their [walking] speeds." Senders Dep. 82. The principal problem with this analysis is that there is no evidence in the record from which a reasonable jury could infer that any of the factual scenarios depicted by Senders more likely than not occurred. Senders' simply speculates as to what speed Joyce might have walked and where she might have been standing.

In addition to the lack of foundation, the Court has difficulty in discerning what calculations Senders followed to reach his conclusions. For example, one of Senders' possible scenarios inexplicably places Joyce half way between the rails when she realized, three seconds before impact, that a train was coming at her. Senders then assigns about .4 seconds to Joyce's duration of glance at the locomotive because "data from US Air Force studies show that the [average] fixation time of pilots performing an instrument landing and scanning instruments on the instrument panel of an airplane, is about 0.4 seconds." Senders then states that Joyce did not have enough time to escape from the train by comparing her pace of motion with that of professional athletes. "The general run of trained athletes take[s], on average, 194 [milliseconds] to react to the starter's gun and on average [] 422 milliseconds to leave the block entirely." Aside from the fact that Senders does not identify the authorities supporting these calculations, he does not explain how glances of pilots and reaction speeds of athletes are reasonably analogous to the facts of our case. Clearly, there is too great of an analytical gap between the data and the opinion proffered. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The reliability of Senders' calculations is further undercut by the fact that, during his career, Senders has never studied human behavior or walking speeds in various settings, particularly at railroad crossings. *Id*. at 96. Because Senders'

haphazard conclusions are not supported by rigorous scientific calculations, the Court excludes opinion 4.

In sum, Senders' entire testimony provides nothing more than speculative possibilities about what Joyce might or might not have done, and where she might or might not have looked before the accident. Senders' opinions are not based on sufficient facts, are not the product of reliable principles and methods, and are not helpful to the jury. Accordingly, the Court bars Senders' testimony in its entirety.

## B.    Federal and Local Rules of Civil Procedure

There are additional reasons that allow us to exclude Senders' opinions 3 and 4. The Court excludes Senders' opinion 3 because it was not previously expressed in Chiriboga's disclosures under Federal Rule of Civil Procedure 26 disclosures. Rule 26(a)(2) requires a retained witness to provide a report containing his opinions and the basis and reasons for the opinions. *Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 727 (7th Cir. 1996). A party that fails to comply with Rule 26(a)(2) "is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37 (c)(1). This sanction is automatic and mandatory. *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008). In his report, Senders stated that the purpose of his analysis was to examine whether Joyce could have seen the lights of the locomotive before she started walking onto the

crosswalk. However, nowhere in the report do we find the slightest information regarding decedent's inability to detect *motion* from the train's headlights or any scientific data backing such an assertion. In his deposition, Senders' belatedly states that anything over 300 feet away is difficult or impossible to detect in a brief glance. A party may not cure "deficient expert reports by supplementing them with later deposition testimony." *Id.* at 642. Senders' untimely statement, made during his deposition, does not provide sufficient notice to opposing counsel of the contents of the expert's report. Chiriboga also has failed to demonstrate how the discovery violation was either justified or harmless. For this additional reason, we exclude Senders' opinion 3.

The Court also excludes Senders' opinion 4 because Chiriboga does not conform to Local Rule 56(a)(1)(3). In his amended statement of additional facts, Chiriboga purports to use Senders opinion 4 to conclusively establish that Joyce was actually between the rails of the inbound track when she became aware of the train, or its bell, 3 seconds before the impact. However, an examination of the report reveals that Senders does not *conclude* that Joyce was half way between the rails 3 seconds before impact but merely *assumes* that she was, based on the testimony of Diane and the locomotive engineer. Because Chiriboga's citation to the record distorts Senders' opinion, the Court excludes Senders' opinion 4.

## II.    Motion To Bar Van Wyk's Expert Testimony

Amtrak moves to bar the following opinions rendered by Van Wyk, Chiriboga's disclosed acoustical engineer:[2]

Chiriboga's Statement of Additional Fact 21:

(1) human beings can become desensitized to a particular sound by hearing similar sounds in a restaurant, on the radio or on a train platform;

(2) a horn is a more useful warning device than a bell because it implements multiple tones at higher decibel levels and is sounded in a particular pattern;

(3) to be an effective warning signal of a train's arrival, a bell must be rung at least as long and as loudly as a horn.

Amtrak asks the Court to exclude Van Wyk's expert testimony because opinions 1, 2, and 3 go beyond the scope of the disclosed expert report.[3] Chiriboga retorts that although these opinions were not expressly stated, they are implicit in Van Wyk's

_____

[2] Chiriboga does not object to Amtrak's motion to bar Van Wyk's opinions indicating that:
(a) the ringing of an Amtrak train bell does not give adequate notice to a pedestrian that a train is in arrival;
(b) to change human behavior, a train bell needs to be heard for 10 to 15 seconds;
(c) that assuming the bells, lights, and gates at the nearby Devon Avenue road crossing were activated, they likely drew the Joyce's attention to the south;
(d) additional visual, audible and physical indicators of approaching trains would have prevented Joyce from attempting to cross the track; and
(e) a train bell is usually associated with a slow moving train while a train horn is associated with a fast moving train.    We therefore grant Amtrak's motion to bar the abovementioned opinions.

[3] Amtrak also submits that Van Wyk's qualifications do not allow him to render the proffered opinions. For purposes of our analysis, we will assume without deciding that Van Wyk is a qualified expert in the areas in which he is asked to offer his testimony.

opinions. Rule 26(a)(2)(B) mandates the disclosure of a written expert report that contains "a *complete* statement of all opinions the witness will express and the *basis* and *reasons* for them." Fed. R. Civ. P. 26(a)(2)(B)(I) and (ii) (emphasis added). Although the "purpose of these reports . . . is not to replicate every word that the expert might say," it has to "convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009). Here, Van Wyk's report suffers from an insurmountable flaw. Chiriboga attempts to offer findings that deviate from the established scope of Van Wyk's opinion. Van Wyk was hired to measure the level of ambient noises at the Edgebrook train station and concluded that the station is heavily impacted by other nearby noise sources. However, his report entirely lacks information, either explicit or implicit, as to the loudness or warning attributes of a train bell versus a train horn. The report also makes no mention of people being desensitized when exposed to certain sounds. Nor can we find in the report any scientific analysis supporting such propositions. There is an obvious disconnect between Van Wyk's conclusions and Chiriboga's assertions in the statement of additional facts.[4] We

---

[4] Chiriboga's statement of additional facts does not provide us with the precise reference in the record where Van Wyk allegedly analyzes and compares the loudness and audibility of a horn in relation with a bell. Furthermore, although Van Wyk refers to desensitization of a human being's audibility in his deposition, a party is not allowed to supplement his deficient report with subsequent deposition testimony. *Ciomber*, 527 F.3d at 642.

conclude that the report does not meet the standard required by Rule 26(a)(2) and grant

Amtrak's motion to bar Van Wyk's expert testimony.

## III.    Motion To Bar Beall's Expert Testimony

Amtrak next moves to bar the following expert testimony of Beall, Chiriboga's

disclosed locomotive engineer[5]:

(1)    <u>Chiriboga's Statement of Additional Fact 29:</u> the Amtrak engineer should have seen Joyce before she reached the tracks and blown the train horn as a warning;

(2)    <u>Chiriboga's Statement of Additional Fact 30:</u>  the Amtrak engineer operated his train in violation of Rules 1.1, 1.1.1, and 1.47. of the General Code of Operating Rules ("GCOR").[6]

Amtrak contends that the Court should exclude opinions 1 and 2 because there

is no factual basis for Beall to conclude that the Amtrak engineer should have detected

Joyce while approaching the tracks, should have sounded the horn, or that the engineer

violated the GCOR rules.[7] In determining admissibility of expert testimony, a court

---

[5] Chiriboga's statement of additional facts 22 to 28 are undisputed. We therefore grant Amtrak's motion to bar Beall's expert testimony as to those opinions.

[6] Chiriboga withdraws Beall's opinion that the Amtrak engineer violated GCOR Rule 1.6.

[7] It is unclear whether Amtrak disputes the fact that Beall is qualified to express opinions 1 and 2. In any event, the Court is satisfied with Beall's qualifications. When assessing the reliability of an engineering expert's testimony, the trial court must consider, among other factors, the expert's particular expertise and the subject of his testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). A review of Beall's curriculum vitae reveals that Beall has worked for several years as a train engineer and as a conductor on passenger trains. His resume also indicates that Beall has served as Safety Director for First American Railways, has given numerous lectures and presentations on railroad safety, and has trained railroad personnel on compliance with railroad rules and safety. Accordingly, we conclude that Beall holds

must assess whether the testimony is sufficiently rooted in the facts of the case at issue

to enable it to assist the jury's resolution of a factual dispute. *Daubert*, 509 U.S. at 591.

An analytical gap between the applicable facts and the proffered opinion cannot be

bridged by the expert's *ipse dixit*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Amtrak's arguments fail for several reasons. First, Beall has a long history of

conducting trains and implementing safety rules for train personnel; doubtless, he has

obtained a considerable level of expertise beyond that of an average person as to how

a train is generally handled. Second, before reaching his observations, Beall reviewed

the event recorder printouts of the front and rear locomotives, the Chicago Police

accident report, and the deposition of Abfalder ("Abfalder"), the Amtrak engineer who

was driving the train that struck Joyce. In his report, Beall notes that Abfalder testified

that "when [he] first saw the individual, *they* weren't at a rail yet." (emphasis added).

Based on that statement, Beall concluded that Abfalder had to have seen them at least

approach the tracks and that, under the rules, nothing impeded Abfalder from sounding

the horn as a warning. There is no analytical chasm between opinions 1 and 2 and the

ascertainable facts of this case. Finally, we believe that Beall's observations and

experience may prove helpful to the jury in resolving the factual issues of this case. We

also note that Amtrak neglected to depose Beall or hire its own expert to challenge

extensive experience in the railroad industry and qualifies as an expert in the areas in which he is asked to
offer testimony.

Beall's findings. We therefore conclude that Beall's assumption, that the Amtrak engineer violated safety rules because he should have seen Joyce before she reached the tracks, finds support in the physical facts as described by the reports and other evidence in the record. Accordingly, we decline to exclude Beall's opinions 1 and 2 on this basis.

## CONCLUSION

Based on the foregoing analysis, Amtrak's motion to bar expert testimony is granted in part and denied in part.

Charles P. Kocoras
United States District Judge

Dated:   June 9, 2011